**MONFORT, INC., Petitioner,**

**v.**

**Anselmo GONZALEZ and The Industrial Claim Appeals Office of the State of Colorado, Respondents.**

**No. 92CA0369.**

Colorado Court of Appeals,
Div. III.

Jan. 14, 1993.

Rehearing Denied March 4, 1993.

Certiorari Denied July 12, 1993.

Hall & Evans, Alan Epstein, Fredrick A. Ritsema, Denver, for petitioner.

Israel Galindo, Denver, for respondent Anselmo Gonzalez.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Thomas S. Parchman, Asst. Atty. Gen., Denver, for respondent Indus. Claim Appeals Office.

Opinion by Judge ROTHENBERG.

Monfort, Inc., seeks review of the final order of the Industrial Claim Appeals Panel, which ruled that the permanent partial disability award to Anselmo Gonzalez was not limited by the reemployment statute, Colo.Sess.Laws 1990, ch. 62, § 8–42–110(3) at 494 (repealed Colo.Sess.Laws 1991, ch. 219 at 1312), to the lesser of medical impairment or a scheduled award. Because we conclude that the reemployment statute applies only if an employee is reemployed or continued in employment at the time the worker reaches maximum medical improvement and the extent of permanent partial disability can be determined, we affirm.

I.

Gonzalez injured his right thumb while working for Monfort in June 1989. When he returned to work after surgery, Monfort assigned him duties that required use of only one hand. Gonzalez received his preinjury rate of pay and was not denied any wage increases.

In September, Gonzalez received word that his wife in Mexico was gravely ill and that he was needed there. He informed Monfort's personnel department and left for Mexico. When he returned on December 2, 1989, and asked for his job back, he was told to reapply. He did so, but was not rehired.

Gonzalez did not reach maximum medical improvement until March 1990. At that time, his treating physician found that Gonzalez' right hand had only half the grip strength of his left and rated his permanent impairment at 4% of the upper extremity and 2% of the whole person. His permanent wage loss was estimated at 30–50%.

Following a hearing on Gonzalez' injury, the Administrative Law Judge determined that Gonzalez' permanent partial disability was 12.7% as a working unit. The ALJ refused to apply the reemployment statute.

Monfort sought review, claiming that the reemployment statute applied and limited Gonzalez' award to the lesser of medical impairment or a scheduled award. The Panel affirmed, concluding that the reemployment statute applies only if a worker is reemployed or offered reemployment at the time the worker reaches maximum medical improvement when the extent of permanent disability can be determined.

II.

On appeal, Monfort contends that the Panel erred in refusing to apply the reemployment statute in effect during the times pertinent here. We disagree.

Before its repeal, the reemployment statute as pertinent here provided:

In any case where an employer reemploys or continues the disabled employee at work in the employment of the employer at the employee's preinjury rate of pay and extends to the employee the usual wage adjustments, the employee's permanent partial disability award shall be limited to permanent medical impairment or a payment under section 8–42–107, whichever is less. This subsection (3) shall not apply if the director finds that due to the injury the employee is permanently unable to perform the duties offered by the employer. If, during the two years following the date of return to work or reemployment, the injured employee, as a result of said employee's permanent disability due to the injury, is dismissed from employment or resigns from employment with the employer, said employee may petition the director for a redetermination of the original permanent partial disability award, and, upon a proper showing of the employee's limitations in the labor market, the director shall order an appropriate award of permanent partial disability.

■ The primary goal in construing a statute is to determine and carry out the intent of the General Assembly. The statute should be read as a whole and con-

strued in context to give effect to the legislative purpose. *Weld County Court v. Richards,* 812 P.2d 650 (Colo.1991).

■ The purpose of the reemployment statute was to encourage employers to retain permanently disabled employees by limiting permanent partial disability awards of reemployed workers to medical impairment or a scheduled award. When the statute was applicable, a reemployed worker could not obtain an award based on loss of earning capacity, which would generally be greater than one based on the schedule or on medical impairment. *See Fulton v. King Soopers,* 823 P.2d 709 (Colo.1992); *Boice v. Industrial Claim Appeals Office,* 800 P.2d 1339 (Colo.App. 1990).

The reemployment statute could not operate as an incentive to retain permanently disabled employees until the employer knew whether an employee was permanently disabled. Thus, in order to obtain the benefit of the statute, the employer had to retain the injured employee after maximum medical improvement was reached and the existence and extent of permanent disability was determined.

The statute was inapplicable if, because of the injury, the employee was permanently unable to perform the duties offered by the employer. This determination could only be made after the employee had reached maximum medical improvement and the extent of permanent disability was determined. It would be difficult to determine whether an employee is permanently unable to perform the duties offered by the employer if the employee is no longer employed when he or she reaches maximum medical improvement.

Under the construction urged by Monfort, reemployment of a worker during the period of temporary disability would be sufficient to limit the permanent disability award. However, such construction would not further the legislative purpose of encouraging employers to retain permanently disabled employees.

Furthermore, when read as a whole, the statute required the employee to be reemployed when permanent disability was awarded. The use of the present tense, "reemploys or continues," indicates that the employment had to be ongoing when permanent partial disability was determined. And, the provision for *re*determination of permanent partial disability based on loss of earning capacity for employees who are dismissed or resign because of the disability shows that an initial determination of permanent partial disability must have preceded the end of the employment.

In addition, the reemployment statute must be read in context as a subsection of the provisions governing permanent partial disability awards. The statute limits only permanent partial disability awards, which are determined only after an employee reaches maximum medical improvement. *See Reynolds v. Industrial Claim Appeals Office,* 794 P.2d 1080 (Colo.App.1990); *Dziewior v. Michigan General Corp.,* 672 P.2d 1026 (Colo.App.1983). A different statute governs temporary total disability benefits. *See* § 8–42–105(3), C.R.S. (1992 Cum.Supp.).

Nor do we agree with Monfort's assertion that *Fulton v. King Soopers, supra,* requires a different result. In *Fulton,* a reemployed worker's advancement from apprentice to journeyman and accompanying pay raise was delayed under labor union rules because of lost work time from the injury. Our supreme court construed the statutory phrase, "usual wage adjustments," to include only wage increases over which the employer had control, stating that "[t]he incentive provided by the statute would be meaningless if the acts required to trigger the statutory limitations were outside the control of the employer." *Fulton v. King Soopers, supra,* at 714. Thus, *Fulton* does not control here because "usual wage adjustments" are not at issue.

■ Finally, and contrary to Monfort's argument, it was the employer's burden to prove the applicability of the reemployment statute because it is in the nature of an affirmative defense. *Valley Tree Service v. Jimenez,* 787 P.2d 658 (Colo.App.1990).

We read *Fulton v. King Soopers, supra,* as overruling *Valley Tree* only to the extent that *Valley Tree* placed the burden on the employer to prove the employee's permanent ability to perform the duties of the reemployment. The burden remains on the employer to prove the basic requirements of the reemployment statute: reemployment, preinjury rate of pay, and extension of the usual wage adjustments. Only if the employer sustains that burden does the burden shift to the employee to avoid application of the statute by proving permanent inability to perform.

In summary, we hold that the reemployment statute limits permanent partial disability awards only when an employee has been reemployed or continued in employment at the time maximum medical improvement has been reached and permanent partial disability ascertained.

The order is affirmed.

SMITH and CRISWELL, JJ., concur.